IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **FRED BOGES,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:10-cv-00024** |
| | ) | **Judge Trauger** |
| | ) | |
| **GENERAL MOTORS COMPANY,** | ) | |
| **GENERAL MOTORS CORPORATION,** | ) | |
| **GENERAL MOTORS, LLC,** | ) | |
| **GENERAL MOTORS PRODUCT SERVICES, INC,** | ) | |
| **d/b/a GENERAL MOTORS OF SPRING HILL** | ) | |
| | ) | |
|     **Defendant.**[1] | ) | |

## MEMORANDUM

Pending before the court is defendant General Motors, LLC's Motion for Summary Judgment (Docket No. 23). The plaintiff has submitted a Response in Opposition to Defendant's Motion (Docket No. 27), and the defendant has filed a Reply Brief in Support (Docket No. 31). At the court's request, the parties have also submitted supplemental briefing on the plaintiff's THRA claim. (Docket Nos. 33 and 34.) For the reasons discussed herein, the defendant's motion will be granted.

---

[1] General Motors, LLC is the only defendant that appears to have been served and appeared. Consequently, dismissal of this suit against this defendant, as discussed herein, disposes of this case.

1

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Fred Boges is a resident of Tennessee.[2] (Docket No. 1 at 1.) He is a member of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). He has been an employee of the defendant or one of its subsidiaries since 1978. The plaintiff currently works in the defendant's facility in Spring Hill, Tennessee, as an hourly union employee. He has held various positions but, since 2004, he has worked in "Engine Block Machining." For purposes of this motion, the parties agree that, at all relevant times, the plaintiff was "fully certified . . . on the operations on which he was working." (Docket No. 28 at 19.)

The defendant published "Standards of Conduct" to govern the conduct of employees such as the plaintiff, and the defendant employs a system of "progressive discipline." That is, when an employee has "prior discipline on his record" and "commits another standard of conduct violation," the employee will be disciplined more harshly, *e.g.*, receiving a suspension rather than a warning. (Docket No. 28 at 7.) Employees may file a grievance "to protest the

---

[2] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket No. 28) and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). There are several instances throughout the plaintiff's Response to the Defendant's Statement of Undisputed Material Facts where plaintiff essentially admits a fact but provides further commentary and arguments that do not controvert the underlying fact. The defendant suggests that this practice is inconsistent with Local Rule 56.1. (*See, e.g.,* Docket 31 at 7.) The court has thoroughly reviewed the record and finds that this further commentary and argument did not create a genuine issue as to any material fact.

discipline."³ (*Id.*)  Frequently, such grievances are settled after negotiations between the defendant's management and representatives of the UAW.  Settlements may result in discipline remaining on an employee's record only temporarily, if the employee refrains from committing further infractions for a specified period of time.

The plaintiff, who is African-American, alleges that, "[d]uring the course of his employment, [his] white supervisors would discipline him in a manner harsher than his white co-workers that were similarly situated that committed the same or similar infractions."  (Docket No. 27 at 1.)  Three disciplinary events involving the plaintiff are relevant to this case.

First, the plaintiff was suspended on May 5, 2009 for violating Standard of Work Number 21 for "threatening, intimidating, coercing or interfering with members of management at any time or creating a hostile work environment."  (Docket No. 28 at 9.)  Specifically, his supervisor accused him of "ripp[ing] company documents from [her] hands[,] refus[ing] to return them, and 'yelling and [being] confrontational in an inappropriate manner.'"  (*Id.* at 10.)  The plaintiff does not recall whether he ripped the documents from her hands, but he admits that he "ball[ed] up and thr[e]w [the documents] in the trash can."  (*Id.* at 9.)  The plaintiff filed a grievance but did not explicitly claim racial discrimination.  After negotiation between management and the union, the length of the suspension was reduced to "balance of shift and two days," but it was agreed that "the [reduced] discipline would remain on plaintiff's records for progressive discipline purposes" and would be removed only if the plaintiff committed no

---

³ Grievances alleging discrimination on the basis of race may be filed pursuant to "paragraph 6a" of the Collective Bargaining Agreement between the defendant and the UAW.

further violations within six months. (*Id.* at 10.)

On September 15, 2009 – within six months, while the May 5, 2009 discipline remained on his record – the plaintiff was disciplined for violating Shop Rule 16 and suspended for "balance of shift plus one week," for failure to promptly request assistance to repair machines for which he was responsible. (*Id.* at 12-14.) At this time, the plaintiff was "team leader," with multiple machines – known as the "second footprint" – under his control. (*Id.* at 13.) These machines produced "product" used by subsequent machines further "down the line." (*Id.* at 14.) The plaintiff's supervisor, Rachel Reasonover, who is white, noticed that machines further down the line were being "starve[d]" of product by the machines on which the plaintiff was working. (*Id.* at 14.) "After arriving at one of the disabled machines [under the plaintiff's control she] learned from the plaintiff that the subject machines ha[d] been disabled for . . . three or more hours." (*Id.* at 13.) The plaintiff admits that he had not called for maintenance assistance or made sure that other team members were "prevent[ing] production shortage." (*Id.* at 13.) The plaintiff's supervisor "decided to discipline plaintiff primarily because he did not seek assistance after it became obvious that he could not restore operations quickly and because . . . she believed he . . . should have known that he should have done so." (*Id.* at 15.) The plaintiff filed a grievance, claiming that the suspension was excessive and not supported by the evidence, but he did not explicitly claim racial discrimination. The grievance was settled by the defendant and the UAW. Pursuant to this settlement, the plaintiff was allowed to return to work immediately, and he was paid for the time he was off. However, the plaintiff had to resign his position as "Team Leader," and "the discipline would remain on plaintiff's record for twelve months." (*Id.*

4

at 17.)

On February 11, 2010 – within twelve months, while the previous discipline remained on his record – the plaintiff was disciplined by a different supervisor, Tamara Trotter, who is also white, for violating Shop Rule 18 by "making scrap unnecessarily, or careless workmanship." (*Id.* at 19.) He was initially suspended for two weeks, the length of which the plaintiff agrees "was a function of progressive discipline." (*Id.* at 20.) The plaintiff filed a grievance, which was settled by the defendant and the union.

The plaintiff alleges that both his September 15, 2009 and February 11, 2010 discipline were the product of racial discrimination. On March 26, 2010, the plaintiff filed suit under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*, and 42 U.S.C. § 1981.

## ANALYSIS

### I. Standard of Review

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009); *see also Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan,* 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 249). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson,* 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan,* 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)).

## II. Racial Discrimination

The plaintiff alleges that his "white supervisors would discipline him in a manner harsher than his [similarly situated] white co-workers." (Docket No. 27 at 1.) He has brought claims under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, and 42 U.S.C. § 1981 for racial discrimination. The Section 1981 claim is analyzed identically to a claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII").[4] *Newman v. Federal Express Co.*, 266 F.3d 401, 406 (6th Cir. 2001) ("Section 1981 claims are analyzed under the Title VII *McDonnell Douglas/Burdine* frame work."). After addressing the Section 1981 claim, the court will consider the THRA claim and whether recent developments in Tennessee law influence the analysis of that claim.

---

[4] The defendant has moved for summary judgment on both of these claims as well a "claim[] for race discrimination under Title VII." (Docket No. 23 at 1.) The plaintiff never amended his Complaint to add a Title VII claim, so the court will not address this issue.

## A. Section 1981 Claim

To establish a *prima facie* case for a Title VII employment "discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). The plaintiff argues that there is both direct and circumstantial evidence of discrimination sufficient to survive summary judgment.

### i. Direct evidence

The plaintiff argues that he need not "proceed under the more onerous *McDonnell Douglas* standard" applicable to circumstantial evidence because the testimony of Terry Wilcox is direct evidence of discriminatory animus. (Docket No. 27 at 5.) Terry Wilcox, like the plaintiff, worked on the "Rough Side" in Engine Block Machining under the supervision of Tamara Trotter – the supervisor who disciplined the plaintiff on February 11, 2010. (Docket No. 24 at 9.) In Mr. Wilcox's deposition, the plaintiff's attorney, after discussing the circumstances of the plaintiff's "scrap block" suspension, asked Mr. Wilcox whether any "white employees that were similarly situated [to the plaintiff had] been guilty of that and had not" been suspended. (Docket No. 27 at 7.) Mr. Wilcox responded that he and two other white employees had been disciplined but not suspended for what he believed were similar infractions while doing a job similar to the plaintiff's and being supervised by Tamara Trotter. (*See id.*)

This is not direct evidence of discriminatory animus for two reasons. First, the Sixth Circuit has held that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's [adverse employment action] do not constitute direct

7

evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). That is, statements made by an employee of the defendant (even a senior level officer within the company) indicating that the adverse employment decision was racially motivated do not constitute direct evidence of discrimination if that employee was not a "decision maker" with regard to the adverse employment action. *Id.* (statements by Vice Provost of university defendant that attributed a failure to rehire the plaintiff to racial animus were not direct evidence of discrimination because the Vice Provost was not a decision maker as to the plaintiff's rehire). Wilcox was not a decision maker with regard to the plaintiff's discipline, and, therefore, his statements cannot constitute direct evidence of discrimination.

Second, direct evidence of racial discrimination is evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions . . . . *without requiring any inferences*." *Grizzell v. City of Columbus Division of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (emphasis added) (internal citations and quotations omitted). However, even the plaintiff concedes that Wilcox's testimony "provides [only] the *inference* that race was a factor in the adverse employment actions relative to the Plaintiff." (Docket No. 27 at 9 (emphasis added).) Thus, by definition, Mr. Wilcox's testimony is not direct evidence.

### ii. Indirect Evidence

The court next considers whether the plaintiff has provided sufficient circumstantial evidence of racial discrimination. In doing so, the court applies the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), as modified by *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). That is, if the plaintiff establishes

a *prima facie* case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Berry v. City of Pontiac*, 269 Fed. Appx. 545, 549 (6th Cir. 2008). If that showing is made, the burden of production again shifts to the plaintiff to demonstrate that the reason proffered by the defendant is a pretext for racial discrimination. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). The plaintiff can establish pretext by showing that the reason proffered by the defendant had no basis in fact, did not actually motivate the decision, or was insufficient to warrant the decision. *Grizzell,* 461 F.3d at 720. The burden of persuasion remains at all times on the plaintiff. *Risch v. Royal Oak Police Dept.,* 581 F.3d 383, 391 (6th Cir. 2009).

### 1. *Prima facie* case

To make his *prima facie* case, the plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for [his] position . . .; (3) he was subject to an adverse employment action; and (4) he was treated differently than [similarly situated] employees outside the protected class for the same or similar conduct." *Berry*, 269 Fed. Appx at 548-49. The parties agree that only the fourth element is at issue for purposes of this motion. (*See* Docket No. 24 at 6-7; Docket No. 27 at 9-10.) The plaintiff argues that the "aforementioned evidence from Wilcox shows that [the plaintiff] was treated less favorably than similarly situated white employees." (Docket No. 27 at 10.) The defendant argues that the plaintiff "cannot meet the fourth element of the *prima facie* case, *i.e.*, he [has not] establish[ed] that similarly situated non-protected employees were treated more favorably." (Docket No. 24 at 6-7.)

To be deemed similarly situated in this context, a plaintiff and his alleged comparator

9

must "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation omitted). The Sixth Circuit has stressed that "the plaintiff [must] demonstrate that he . . . is similarly-situated to the non-protected employee in all *relevant* respects." *Id.* at 353 (emphasis retained).

The plaintiff has identified three alleged comparators – Scott Prins, Terry Wilcox and Larry Palmer – with respect to the February 11, 2010 discipline.[5] (*See* Docket No. 27 at 10) The defendant, in essence, concedes that these three white co-workers worked the same shift, doing similar work, and were on at least one occasion disciplined by Ms. Trotter for violating Standard of Conduct Number 18.[6] (*See* Docket No. 24 at 9.) However, the defendant notes that each of these comparators "did not have *any* discipline on their records," while the defendant had significant prior discipline. (*Id.*) Thus, the defendant argues, these co-workers are not similarly situated because of a differing disciplinary history, which, in the context of a scheme of "progressive discipline," is a relevant differentiating circumstance that would distinguish the employer's punishment of similar misconduct. (*See id.* at 8.)

---

[5] The plaintiff has admitted that his May 5, 2009 discipline was not racially motivated and did not challenge it in this suit. (*See* Docket No. 28 at 9.) The plaintiff has not identified any alleged comparators with respect to his September 15, 2009 discipline. Indeed with respect to the September 15, 2009 incident, the plaintiff now claims that this discipline was "more than likely" motivated by his supervisor's self-interest in covering up her own alleged inattentiveness. (Docket No. 27 at 11.)

[6] The defendant notes that the plaintiff worked on the "Rough Side," and Scott Prins worked on the "Smooth Side" on different machines. (*See id.*) The court assumes these differences are immaterial for the sake of this motion.

10

The disciplinary history of the plaintiff is a crucial variable in determining the extent to which a particular employee will be disciplined for a particular infraction, particularly under a "progressive discipline" scheme. *See Perry*, 269 Fed. Appx. at 550 (concluding that the plaintiff was not similarly situated with a comparator with fewer instances of discipline "just based on the number[ of times disciplined] and the Department's practice of progressive discipline"). The plaintiff essentially concedes that he is not similarly situated if differences in disciplinary history are relevant. (Docket No. 27 at 12 ("*If* [the plaintiff] had fewer infractions or no infractions *then* he would meet the 'nearly identical' standard because his disciplinary history *would be comparable*.") (emphasis added).) Consequently, the plaintiff has failed to make out a *prima facie* case of racial discrimination.

In an effort to salvage this claim, without citing any authority for this proposition, the plaintiff suggests that this case should be decided as if "he had no infractions," speculating that "he would not have any disciplinary problems, at least much less, if he were treated the same as similarly situated white employees." (*Id.* at 12.) This suggestion is without merit. As discussed at length above, there is no material dispute about the underlying factual bases for the plaintiff's discipline on May 5, 2009 or September 15, 2009, and no suggestion that this discipline was racially based. (*See* Docket No. 28 at 9, 11, 14-15; Docket No. 27 at 11.)

**B. THRA Claim**

Until *Gossett v. Tractor Supply Company, Inc.*, 320 S.W. 3d 777 (Tenn. 2010), it was well settled that "the analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims," and, therefore, prior to *Gossett*, the court would have evaluated the

plaintiff's Section 1981 and THRA claims together, applying the well-recognized *McDonnell Douglas* burden-shifting framework. *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008). In *Gossett*, however, the Tennessee Supreme Court held that the *McDonnell Douglas* burden-shifting framework "is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence." 320 S.W.3d at 779.

*Gossett* was a case in which the plaintiff alleged that he had been the victim of common law retaliation by his employer. *Id.* Such claims were analyzed by Tennessee courts under a scheme similar to the *McDonnell Douglas* framework, and the *Gossett* court concluded that this case presented "an opportunity to consider the continued viability of the *McDonnell Douglas*" framework. *Id.* at 781. While *Gossett* was a common law retaliation case, this court reads the opinion as a general rejection of the burden-shifting framework in discrimination and retaliation cases, including those brought under the THRA. *Id.* at 781 (discussing how the framework has been applied in "statutory employment discrimination and retaliation claims" and then rejecting the framework).

Specifically, the *Gossett* court held that "[e]vidence satisfying an employer's burden of production pursuant to the *McDonnell Douglas* framework does not necessarily demonstrate that there is no genuine issue of material fact." *Id.* at 782. That is, an employer could articulate a legitimate explanation for the adverse employment action or retaliation, and there could still be an issue of disputed fact as to whether discriminatory or retaliatory animus was the basis for the adverse employment action. *Id.* at 782-83. In briefing here, the parties did not cite *Gossett*, and, therefore, the court requested supplemental briefing on *Gossett*'s potential impact on the court's

12

analysis of this case. (Docket No. 32.)

The plaintiff's submission generally maintains that the court should apply *Gossett* here and find that, taking all of the evidence into consideration, summary judgment is inappropriate because "a jury could decide that [the plaintiff] was the victim of racial discrimination." (Docket No. 33 at 3.) The defendant's submission primarily focuses on the fact that federal district courts in Tennessee have already declined to apply *Gossett* in a series of cases. (Docket No. 34.)

Indeed, federal district courts in Tennessee have not afforded much weight to *Gossett* for a few reasons. Interestingly, some have suggested that *Gossett* only applies to retaliation claims and perhaps only to common law retaliation claims. *Moling v. O'Reilly Automotive*, 2011 WL 112586, note 11 (W.D. Tenn. Jan. 13, 2011); *Philip v. Wrigley Manufacturing Co. LLC*, 2010 WL 4318880, note 5 (E.D. Tenn. Oct. 22, 2010).

Additionally, following a thorough analysis, the *Moling* court concluded that *McDonnell Douglas* was still the appropriate standard for federal district courts in Tennessee to apply because *Gossett* announced a state procedural rule, not a substantive rule that would be applied by a federal court sitting in diversity. 2011 WL 112586, *17-21; *see also Blackburn v. Shelby County*, 2011 WL 692808, *25 (W.D. Tenn. Feb. 18, 2011)(endorsing the view that *Gossett* announced a procedural rule).

It is not necessary to enter this procedural/substantive thicket because *Gossett*, even if it were applied here, would not affect the outcome. That is, *Gossett* dispenses with "burden shifting" under *McDonnell Douglas* but, all indications are, retains the plaintiff's burden to come forward with *prima facie* evidence of discrimination or retaliation. 320 S.W.3d at 786

("evidence of a legitimate reason for the discharge, combined with the employee's evidence of a *prima facie* case, generally presents a question of fact for the factfinder"); *see also Philip*, 2010 WL 4318880, note 5 ("even if the Court applied *Gossett* . . . the outcome would not be affected since Plaintiff fails to make out even a *prima facie* case"); *Phinnessee v. Young Touchstone Co.*, 2011 WL 184017, *10 (W.D. Tenn. Jan. 20, 2011)(no need for *Gossett* analysis where the plaintiff failed to make out a *prima facie* case); *Moling*, 2011 WL 112586, *16-17 (only moving to "challenging endeavor" of classifying the law as procedural or substantive after finding that the plaintiff had sufficiently established the *prima facie* case). Here, as discussed above, the plaintiff has failed to make out a *prima facie* case of discrimination. Therefore, the plaintiff's THRA claim will also be dismissed.

## CONCLUSION

For the reasons discussed herein, the defendant's Motion for Summary Judgment (Docket No. 23) will be granted and this case will be dismissed.

An appropriate order will enter.

                                                                      _____
                                                                      ALETA A. TRAUGER
                                                                      United States District Judge